*187
 
 OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 While driving his own automobile on November 22, 1995, appellant Thomas Bettenhauser was seriously injured in a two-car accident. The other driver’s insurance policy had a $10,000 limit, and Bettenhauser’s policy did not include underinsurance coverage. Accordingly, on February 1, 1996, Bettenhauser, who lived with his parents at the time of the accident, filed an underinsurance claim pursuant to their policy with respondent Worcester Insurance Company. Over the next several months, Bettenhauser responded to Worcester’s demands for discovery and for a medical examination. In December 1996, with Worcester’s consent, Bettenhauser settled his negligence action against the other driver for the policy limit of $10,000.
 

 After settlement negotiations on the underinsurance claim stalled, Bettenhauser served Worcester with a demand for arbitration, and the arbitration was set down for March 24, 1997. Worcester then commenced this special proceeding to permanently stay arbitration, urging for the first time that
 
 “no coverage
 
 exists in respect to thomas bettenhauser’s claim for underinsured motorist benefits in that [he] was operating his
 
 own vehicle
 
 at the time of the accident and was not operating a vehicle owned by the policyholder.” Supreme Court granted the stay, concluding that the policy did not provide coverage “for family members driving an automobile not covered by [the] policy.” A divided Appellate Division affirmed. Because Worcester failed to timely deny coverage, we now reverse.
 

 Analysis begins with the Worcester policy. The “Underinsured Motorists Coverage” endorsement opens with the following “Insuring Agreement:”
 

 “A. We will pay damages which an ‘insured’ is legally entitled to recover from the owner or operator of an ‘underinsured motor vehicle’ because of ‘bodily injury:’
 

 “1. Sustained by an ‘insured;’ and
 

 “2. Caused by an accident. * * *
 

 “B. ‘Insured’ as used in this endorsement means:
 

 “1. You or any ‘family member.’ ”
 

 The policy defines “family member” as “a person related to you by blood, marriage or adoption who is a resident of your household.”
 

 
 *188
 
 Following the “Insuring Agreement” paragraphs is a section labeled “Exclusions,” which reads in part:
 

 “A.
 
 We
 
 do not provide Underinsured Motorists Coverage for ‘bodily injury’ sustained by any person:
 

 “1. While ‘occupying,’ or when struck by, any motor vehicle owned by you or any ‘family member’ which is not insured for this coverage under this policy.”
 

 Worcester urges that, read as a whole, the policy unambiguously indicated lack of coverage where, as here, a family member was involved in an accident while driving his own car that was not insured under the policy. Consequently, Worcester maintains that it had no duty whatever — whether to arbitrate or timely deny coverage — with respect to Bettenhauser’s claim. Bettenhauser, on the other hand, argues that Worcester waived its right to invoke a policy exclusion by failing to timely deny coverage pursuant to Insurance Law § 3420 (d). We agree with Bettenhauser and disagree with Worcester.
 

 Insurance Law § 3420 (d), applicable only to claims for “death or bodily injury,”
 
 *
 
 reads:
 

 “If under a liability policy delivered or issued for delivery in this state, an insurer shall disclaim liability or deny coverage for death or bodily injury arising out of a motor vehicle accident or any other type of accident occurring within this state, it shall give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant.”
 

 Disclaimer pursuant to section 3420 (d) is unnecessary when a claim falls outside the scope of the policy’s coverage portion. Under those circumstances, the insurance policy does not contemplate coverage in the first instance, and requiring payment of a claim upon failure to timely disclaim would create coverage where it never existed. By contrast, disclaimer pursuant to
 
 *189
 
 section 3420 (d) is necessary when denial of coverage is based on a policy exclusion without which the claim would be covered
 
 (see, Zappone v Home Ins. Co.,
 
 55 NY2d 131, 134, 138 [construing former Insurance Law § 167 (8), now Insurance Law § 3420 (d)];
 
 see also, Jerge v Buettner,
 
 90 NY2d 950, 953;
 
 Handelsman v Sea Ins. Co.,
 
 85 NY2d 96, 102,
 
 rearg denied
 
 85 NY2d 924). Failure to comply with section 3420 (d) precludes denial of coverage based on a policy exclusion.
 

 As the split at the Appellate Division evidences, drawing the line between a lack of coverage in the first instance (requiring no disclaimer) and a lack of coverage based on an exclusion (requiring timely disclaimer) has at times proved problematic. Both are situations where there is no coverage.
 
 Zappone
 
 and
 
 Handelsman,
 
 however, illustrate the distinction and demonstrate why, in the case before us, timely denial of coverage was required.
 

 In
 
 Zappone,
 
 the policy’s coverage clause at the outset conditioned recovery on liability “arising out of the ownership, maintenance or use of [a covered] or a
 
 non-owned
 
 automobile” (emphasis supplied)
 
 (see, Handelsman v Sea Ins. Co., supra,
 
 85 NY2d, at 102). Because the automobile involved in the accident was owned by a family member and was not within the coverage clause, we concluded that there was never a contractual relationship between the carrier and the claimant giving rise to any duty, including the statutory duty to timely disclaim. We explicitly distinguished the situation where a claim would be covered but for a specific policy exclusion, explaining that “the carrier must deny coverage on the basis of the exclusion if it is not to mislead the insured and the injured person to their detriment”
 
 (Zappone v Home Ins. Co., supra,
 
 55 NY2d, at 136).
 

 In
 
 Handelsman,
 
 by contrast, the coverage portion of the insurance policy required payment for “bodily injury or property damage for which any ‘insured’ becomes legally responsible because of an auto accident,” and defined an “insured” as a “ ‘family member’ for the ownership, maintenance or use of any auto”
 
 (id.,
 
 at 99-100). The policy also contained a “specific exclusion,” stating that the coverage described elsewhere did not apply to the ownership or use of a vehicle “owned by any ‘family member’ ” that was not a “covered auto”
 
 (id.,
 
 at 101).
 

 In
 
 Handelsman,
 
 a son was involved in an accident while driving his mother’s car. Both mother and son filed a claim under the father’s insurance policy, which did not specifically list the vehicle involved in the accident as a “covered auto.”
 
 *190
 
 Because mother and son were “insureds” who satisfied all the conditions of the relevant coverage provisions — which did not contain any limitation with reference to vehicles — we concluded that a relationship between the carrier and the claimants existed, requiring timely denial of coverage based on the policy exclusion. We further explained that the carrier’s failure to timely disclaim was “dispositive” and precluded subsequent reliance on the exclusion to avoid its obligations
 
 (see also, Jerge v Buettner, supra,
 
 90 NY2d, at 952-953;
 
 Sphere Drake Ins. Co. v Block 7206 Corp.,
 
 265 AD2d 78;
 
 Government Empls. Ins. Co. v Kolodny,
 
 269 AD2d 564).
 

 This case is no different from
 
 Handelsman.
 
 Timely disclaimer was necessary because Bettenhauser’s claim falls squarely within the policy’s coverage provisions set out in the “Insuring Agreement.” The relevant conditions of the Insuring Agreement — none of which depend on the vehicle driven — are met: Bettenhauser is defined as an “insured” entitled to recover from an owner or operator of an underinsured motor vehicle for “bodily injuries” caused by an accident. Denial of coverage is predicated on one of the designated “Exclusions.” But for a specified circumstance — here, the use of a family-owned motor vehicle not insured by the policy — Bettenhauser’s claim would have been covered.
 

 The situation presented is precisely the one Insurance Law § 3420 (d) was intended to avoid. Section 3420 (d) was enacted to avoid prejudice to an injured claimant who could be harmed by delay in learning the insurer’s position. Worcester waited more than a year to deny coverage, all the while subjecting Bettenhauser to discovery demands, and ultimately consenting to settlement of his action against the other driver. Having failed to comply with Insurance Law § 3420 (d), Worcester cannot now rely on the policy exclusion to escape liability.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, and the petition to stay arbitration dismissed.
 

 Judges Bellacosa, Smith, Levine, Ciparick, Wesley and Rosenblatt concur.
 

 Order reversed, etc.
 

 *
 

 Worcester’s reliance on
 
 New York Univ. v Continental Ins. Co.
 
 (87 NY2d 308, 323) and
 
 Schiff Assocs. v Flack
 
 (51 NY2d 692, 697-699) is misplaced. Neither case involved a claim for bodily injury implicating Insurance Law § 3420 (d). Reliance on
 
 Crouse W. Holding Corp. v Sphere Drake Ins. Co.
 
 (92 NY2d 1017) is also unwarranted as we had no occasion in that case to review the Appellate Division’s determination regarding the insurer’s disclaimer (see,
 
 Crouse
 
 W.
 
 Holding Corp. v Sphere Drake Ins. Co.,
 
 248 AD2d 932,
 
 appeal dismissed, lv denied
 
 92 NY2d 941).